IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

Daniel de la Torres,           )

    PLAINTIFF,                 )

VS.                            )          CV-02-H-0622-NE

City of Huntsville,            )

    DEFENDANT.                 )

**ENTERED**

FEB 1 9 2004

## MEMORANDUM OF DECISION

The court has before it the July 29, 2003 motion of defendant City of Huntsville for summary judgment, as well as defendant's August 28, 2003 motion to strike. Pursuant to the Court's May 29, 2003 order, the motion for summary judgment was deemed submitted, without oral argument, on August 28, 2003. For the reasons set out herein, defendant's motion for summary judgment is due to be granted, and defendant's August 8 and 28, 2003 motions to strike are rendered moot.

### I. Procedural History

Plaintiff Daniel De la Torres, on his own behalf, commenced this action on March 1, 2002 by filing an application, which the court by its March 12, 2002 order treated as a complaint. The complaint, as amended on April 9, 2002, alleges that the City of Huntsville discriminated against De la Torres both on the basis of age, in violation of the Age Discrimination in Employment Act

(ADEA), and national origin, in violation of Title VII of the
Civil Rights Act of 1964.   Plaintiff, after retaining counsel,
subsequently submitted a second amended complaint on July 30,
2002 making out claims under the same two statutes.
Specifically, the plaintiff alleges that the City of Huntsville
interviewed De la Torres for the position of Traffic Signal
Technician, and that with knowledge of plaintiff's age[1] and
race[2], defendant hired a 24-year-old white male who, plaintiff
alleges, was less qualified for the position than De la Torres.
Plaintiff further asserts that the decision to hire another
candidate over De la Torres was not made in furtherance of a
legitimate business interest.

Defendant's July 29, 2003 brief in support of its motion for
summary judgment (Doc. #24) asserts that there are no genuine
issues of material fact regarding either of plaintiff's claims
and that defendant is entitled to judgment as a matter of law on
both claims.   Plaintiff filed a brief in opposition to
defendant's motion (Doc. #35) on August 28, 2003.   Defendant
filed a reply to plaintiff's response on September 5, 2003.
(Doc. #36.)   Both parties made evidentiary submissions in support
of their arguments.   (Docs. #25 - 33.)   Defendant filed a motion
on August 28, 2003, to strike portions of plaintiff's evidentiary

--------

[1] Plaintiff was 62 years-old at the time he was interviewed.

[2] De la Torres is Hispanic.

2

submissions.

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  See id. at 323.  Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  See id. at 324.

The substantive law will identify which facts are material and which are irrelevant.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115

(11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson</u>, 477 U.S. at 248.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  <u>See</u> <u>id.</u> at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  <u>See</u> <u>Fitzpatrick</u>, 2 F.3d at 1115-17 (citing <u>United States v. Four Parcels of Real Property</u>, 941 F.2d 1428 (11th Cir. 1991)(<u>en banc</u>)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial.  <u>See</u> <u>Fitzpatrick</u>, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this

4

method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to _affirmatively_ show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case.  See _Fitzpatrick_, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  See _Lewis v. Casey_, 518 U.S. 343, 358 (1996) (citing _Lujan v. Defenders of Wildlife_, 504 U.S. 555, 561 (1992)).

5

### III. Relevant Undisputed Facts[3]

In March of 2001, the City of Huntsville posted job announcements for two positions: Traffic Signal Technician and Street and Sign Marking Technician.  (Puckett Aff. at ¶ 2.)  The announcement for the signal tech position stated that the nature of the work involved:

> [T]he installation, maintenance, improvement and repair of all traffic signals, and automated vehicle control devices within the City of Huntsville.  Work involves installing, maintaining, improving and repairing traffic signals' responding to trouble calls; performing on-call duty; performing preventive maintenance; operating specialized trucks and equipment; locating signals and cables for other agencies; directing the activities of contractors; and building and dismantling signal equipment.[4]

(Puckett Depo. at Exh. 2.)  Additionally, the posting indicated that the signal tech position required the operation of a 35-foot bucket and a 40-foot platform truck.  (Id.)  Finally, the posting stated that a "Class B CDL" (commercial driver's license) was a "necessary special requirement" of the position.  (Id.)  However,

---

[3] If facts are in dispute, they are stated in the manner most favorable to the plaintiff.  See Fitzpatrick, 2 F.3d at 1115.

[4] The signal tech posting goes on to indicate that the work would include
> [i]nstall[ing] new traffic signalized intersections, makes operational improvements, performs preventive maintenance and makes structural, electrical or electronic repairs at existing traffic signalized intersections, responds to 'trouble calls' of signal equipment malfunctions and independently locates, troubleshoots and repairs through component replacement, relays, timers, vehicle detectors, signal load switches, conflict and current monitors, flasher electro-mechanical and micro-processing controllers and all other related signal equipment hardware.

(Puckett Depo. at Exh. 2.)

at the time the challenged employment decision was made, the CDL
requirement was of no consequence because the City's traffic
department had only one truck that required a CDL to operate and
that it was soon to be retired from the fleet. (Barnett Aff at ¶
3; Barnett Depo. at 36-37.)  Moreover, other signal technicians
had CDL and would be able to operate that one truck in the
meantime. (Barnett Aff. at ¶ 3.)

The signal tech position for which plaintiff applied
requires that about 40% of the tech's time be spent installing
new traffic signals "from the ground up," without contractor
assistance.  (Barnett Depo. at 29.)  The other 60% of the tech's
time would be spent in maintaining the existing system
components.  (Id. at 31.)

Plaintiff submitted applications for two positions with the
city.  The signal position discussed above and a sign position
(for which he was also not hired and for which he has not raised
a claim in this action).  (Puckett Aff. at ¶ 2.)  Plaintiff's
application was among the fourteen received for the signal tech
position.  (Id. at ¶ 3.)  Tim Barnett, the city's Traffic
Operations Division manager, subsequently received these
applications and distributed copies of them to his assistant,
Dennis Thompson, and to Terrell Nelson, another signal technician
who serves as a foreman overseeing the city's signal tech crews.
(Barnett Aff. at ¶ 4; Barnett Depo. at 12.)  The applications

received by Barnett and distributed to Thompson and Nelson did
<u>not</u> contain any indication of the respective applicant's race,
color, age, sex, religion, disability, or national origin.[5]
(Puckett Aff. at ¶ 3; Barnett Aff. at ¶ 4.)

Barnett, Thompson, and Nelson each screened the fourteen
applications and independently developed a list of the top three
applicants.  (Barnett Aff. at ¶ 5.)  All three screeners listed
the same three candidates in the same decreasing order of
preference: Nance Towery, Timothy Riley, and Sylvester Mazza.
(<u>Id</u>.)  This list indicated with whom interviews should be
conducted.  (<u>Id</u>.)  An additional candidate, Kevin Truett, who was
considered to be well-qualified for the position was also to be
interviewed.  (Barnett Aff. at ¶ 8.)  After interviewing these
four individuals, Towery was ultimately chosen for the job and is
therefore plaintiff's comparator in this case.  (Barnett Aff. at
¶ 11.)

As indicated, plaintiff, De la Torres, was not chosen by any
of the screeners for an interview.  Plaintiff's application made
obvious that plaintiff had not worked with traffic signals since
1987, and that plaintiff did not have any experience in the
construction of traffic signals.  (Barnett Aff. ¶ 7; Plaintiff's
job application for the signal position (hereinafter

---

[5] However, the court recognizes that one might reasonably
infer from plaintiff's surname, de la Torres, that he is of
Hispanic origin.

"Application"), De la Torres Depo. at Def.'s Exh. 8; see also De
la Torres Depo. at 56-58, 110.)  The record explicitly indicates
that at least Barnett and Thompson did not find anything in
plaintiff's application that would prompt them to choose
plaintiff for an interview for the signal position.  (Barnett
Aff. at ¶ 7; Thompson Aff. at ¶ 2.)[6]

      After the interviews, all three members of the "committee"
selected Towery as their first choice candidate.  (Barnett Aff.
at ¶ 8.)  Approximately one week later, the City was notified
that a discrimination charge had been filed by De la Torres with
the Equal Employment Opportunity Commission ("EEOC") on June 5,
2001.  (Puckett Aff. at ¶ 4.)  The charge alleged that plaintiff
was discriminated against based on age and national origin
because he had not been hired for the signal tech position.
(Id.)  At the time the charge was filed the signal tech position
had not yet been filled.  (Id.)

      Thompson[7] was asked by Mia Puckett, the City's Director of
Human Resources, to review the list of applicants of the signal
tech position again in light of an EEOC charge that had been

_____

      [6] Defendant also asserts that Nelson found nothing in
plaintiff's application to prompt him to choose the plaintiff for
an interview.  However, the court can find no admissible evidence
to support this assertion in the record.  But the record does
clearly reflect that Nelson did not select De la Torres for an
interview.  (See supra at 8.)

      [7] Thompson's superior, Barnett, was on vacation at the time.
(Puckett Aff. at ¶ 5.)

filed.  (Puckett Aff. at ¶ 5; Thompson Aff. at ¶ 6.)  Unaware of the identity of the individual who had filed the charge, Thompson again reviewed the applicant list and selected three additional candidates among the ten that remained.  (Id.)  Plaintiff was among those three.  (Id.)  Puckett then asked that plaintiff be interviewed in order to assure that "De la Torres would have every opportunity to state his qualifications."  (Puckett Aff. at ¶ 6.)

### A.   Plaintiff's Asserted Qualifications

Plaintiff was then interviewed by Barnett, Thompson, and Nelson in September 2001.  (Barnett Aff. at ¶ 12.)  Coupled with plaintiff's application, the interview evidenced that while plaintiff possessed a CDL, his only experience with traffic signals was obtained while working for the City of Dallas, Texas for slightly more than five years from July 1982 until February 1987.  (De la Torres Depo. at 110.)  During that period of time Dallas employed "electro-mechanical" signals and "solid state" signals, instead of the microprocessor operated "Model 170's" currently used by Huntsville.  (Barnett Aff. at ¶ 12; Pearson, Signal Coordinator for City of Dallas, Aff. at ¶ 7.)  Plaintiff simply did not have any experience working with the Model 170 system.  (De la Torres Depo. at 69, 70; Pearson Aff. at ¶ 7.)  Moreover, plaintiff's deposition testimony demonstrates a fundamental lack of understanding regarding the difference

between the microprocessor signals used by the City of Huntsville and the solid state signals on which he gained experience in Dallas some fifteen years ago.[8] (De la Torres Depo. at 70-73).

With particular regard to maintenance, there is a meaningful distinction between the two types of signals.  For example, unlike older signals that utilized interchangeable modules[9], if a Model 170 malfunctions, diagnosis of the problem includes an examination of the software in the field using a laptop connected to the controller system.  (Barnett Aff. at ¶ 14).

In addition, and most importantly, plaintiff has no experience constructing traffic signals.  (De la Torres Depo. at 57.)  It is also significant that, plaintiff has no experience operating a derrick digger truck, a platform truck, nor a loop saw.  (Id.)  All of these implements are used by the City in erecting its traffic signals.  (Barnett Aff. at ¶ 16.)  Plaintiff did not know what a pipehorn[10] was.  (De la Torres Depo. at 58.)

---

[8] The record illustrates the difference between a "Model 170" controller (the type used by Huntsville) and an electro-mechanical signal (the type used by Dallas at the time of plaintiff's employment there) as "comparable to the difference between using word processing software on a computer and typing on a typewriter."  (Barnett Aff. at ¶ 13.)

[9] The court understands, in short, that the modules making up older, solid-state systems were repaired in much the same way a light bulb is replaced - pull out the bad one and put in a good one.

[10] The court did not know either.  As it turns out, a pipehorn is the equipment used to locate wire and conduit

(continued...)

Plaintiff has no experience erecting traffic signal posts, assembling signal "heads", determining the proper placement of poles, assembling interior parts of the signal cabinets during construction, nor repairing traffic poles.  (Id. at 58-60.) Finally, along with plaintiff's limited relevant experience, the interview and application revealed a sporadic work history. (Barnett Aff. at ¶ 17; De la Torres Depo. at 13-44, 82-92.)  The interview, indeed, served to reinforce the conclusions the committee of interviewers had drawn from their initial review of plaintiff's application.  (See Barnett Aff. at ¶ 19; see Thompson Aff. at ¶ 9.)

### B.   Towery's Qualifications

Conversely, Towery's application and interview indicated a number of qualifications that caused all the committee members to place him atop their individual list of candidates.  First, Towery had, since high school, been employed in different capacities with Tecorp.[11]  Tecorp is a company with which Barnett was familiar as the City had contracted with Tecorp to install traffic signals in the past.  (Barnett Aff. at ¶ 2.)[12]  Towery

---

[10](...continued)
underground.  And is used by the City in the construction of its traffic signals.  (Barnett Aff. at ¶ 16.)

[11] Tecorp is owned and operated by Towery's father.  (Towery Aff. at ¶ 2.)

[12] While the City erects most traffic signals itself, at times of high volumes of work or when major projects are
(continued...)

had been a full-time employee of Tecorp for approximately three years before accepting the position with the City.  (Towery Depo. at 9-10.)  Towery's experience at Tecorp consisted primarily of working in the construction of traffic signals from the ground up and in troubleshooting problems that arose with traffic signal system components, including the Model 170.  (Towery Aff. at ¶ 3.)  In the process of erecting traffic signals with Tecorp, Towery gained experience using a loop saw, operating platform and bucket trucks, operating a digger derrick truck, operating trenchers, backhoes, jack-hammers, and other hydraulic tools. (Barnett Aff. at ¶ 10; Towery Aff. at ¶ 3.)  Unlike plaintiff, Towery did not have a commercial driver's license.  (Towery Depo. at 13.)

### IV.  Applicable Substantive Law and Analysis

As a preface, it is appropriate to discuss the precise nature of plaintiff's ADEA and Title VII claims.  In employment discrimination cases, courts have long distinguished between "disparate treatment" and "disparate impact" as theories of liability.  Hazen Paper Co. v. Biggins, 507 U.S. 604,609, 113 S. Ct. 1701, 1705 (1993).  Disparate treatment occurs when "[t]he employer simply treats some people less favorably than others because of their race, color, religion [or other protected

_____

[12](...continued)
undertaken, the city contracts such work out.  (Barnett Aff. at ¶ 2.)

13

characteristics]."  Hazen Paper, 507 U.S. at 609, 113 S. Ct. at 1705.  Disparate impact, by contrast, arises when "employment practices ... are facially neutral in their treatment of different groups but ... in fact fall more harshly on one group than another and cannot be justified by business necessity." Id.  Plaintiff articulates a disparate treatment claim both on the basis of age and race.

### A.   The ADEA Claim

The ADEA provides that "[i]t shall be unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1) (emphasis added).

The substance of plaintiff's ADEA claim is that because of his age, the City refused to hire him.  Having alleged such disparate treatment, liability depends upon whether De la Torres's age actually motivated the City's decision not to hire him.  "That is, the plaintiff's age must have actually played a role in the employer's decision-making process and had a determinative influence on the outcome."  Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000) citing Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 120 S.Ct. 2097, 2105 (2000).

14

The court looks to <u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1973), for the burden-shifting framework with which to evaluate ADEA claims that are based upon circumstantial evidence of discrimination.[13]  <u>Combs v. Plantation Planters</u>, 106 F.3d 1519, 1527-28 (11th Cir. 1997).  As dictated by the framework, plaintiff must first, bearing a burden of persuasion, establish a prima facie case of discrimination.  <u>Id</u>.  In an ADEA case involving failure to hire, a plaintiff may establish a prima facie by showing that he was (1) a member of the protected age group (i.e. 40 years of age or older), (2) subjected to adverse employment action, (3) qualified to do the job, and (4) was replaced by or otherwise lost a position to a younger individual. <u>Turlington v. Atlanta Gas Light Co.</u>, 135 F.3d 1428, 1432 (11th Cir. 1998).  And although a plaintiff's burden in proving a prima facie case is light, summary judgment against the plaintiff is, nonetheless, appropriate if he fails to satisfy any one of the

---

[13] A plaintiff may also seek to assert a claim of discrimination by offering direct evidence of discrimination. Direct evidence is "evidence which, if believed, would prove the existence of a fact without inference or presumption." <u>Carter v. City of Miami</u>, 870 F.2d 578, 582 (11th Cir. 1989).  "Only the most blatant remarks, whose intent could be nothing other than discrimination on the basis of age, constitute direct evidence of discrimination." <u>Earley</u>, 907 F.2d at 1081 (11th Cir. 1990). Plaintiff has provided no direct evidence that the City of Huntsville had a discriminatory intent in choosing to not hire De la Torres.  Nor has plaintiff provided any evidence that defendant ever made reference to age in denying De la Torres the position.  Because plaintiff does not cite to any comment or even a suggestion by defendant (or any of its employees) that age was a factor in not hiring plaintiff, plaintiff is barred from advancing his case on a direct evidence basis.

elements of a prima facie case.  Id. at 1432-33.  "For example,
summary judgment is appropriate if [plaintiff] fails to
demonstrate that he was qualified to perform the position for
which he was rejected."  Id. at 1433 citing Baker v. Sears,
Roebuck & Co., 903 F.2d 1515, 1520-21 (11th Cir. 1990).  The
court notes, however, that a plaintiff seeking to establish a
prima facie case under the ADEA (as opposed to Title VII)[14] must
show only that he was qualified to do the job for which he was
rejected.  See Jameson v. Arrow Co., 75 F.3d 1528, 1531 (11th
Cir. 1996).

     If the plaintiff successfully establishes a prima facie
case, a presumption of discrimination is created and the focus of
the enterprise then shifts to the defendant.  Bearing only a
burden of production, the defendant is called on to articulate a
legitimate, nondiscriminatory reason for the challenged
employment action.  See Combs, 1056 F.3d at 1528 (holding that
the employer "need not persuade the court that it was actually
motivated by the proffered reasons.  It is sufficient if the
defendant's evidence raises a genuine issue of fact as to whether
it discriminated against the plaintiff.")

     Having articulated one or more nondiscriminatory reasons for

_____

     [14] Under Title VII, plaintiff must show that a person
outside of the plaintiff's protected class with equal or lesser
qualifications received the job.  Roberts v. Gadsden Mem'l Hosp.,
835 F.2d 793, 796 (11th Cir.) (a Title VII case) amended by 850
F.2d 1549 (1988).

the adverse employment action at issue, the presumption of discrimination is destroyed.  <u>Id</u>.  Then the plaintiff has the opportunity to present evidence, "including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision."  <u>Id</u>. (citations omitted).  But if the plaintiff fails to present sufficient evidence to create a genuine issue of material fact as to whether each of the defendant's articulated reasons is pretextual, then the employer is entitled to summary judgment on the claim.  <u>See id</u>.[15]

---

[15] "Although the defendant is entitled to summary judgment in its favor if the plaintiff does <u>not</u> proffer sufficient evidence of pretext, the converse is not necessarily true.  If the plaintiff does proffer sufficient evidence that the defendant's stated reasons are pretextual, the plaintiff still may <u>not</u> be entitled to take his case to a jury.  In <u>Reeves</u>, which dealt with Rule 50, judgment as a matter of law, the Supreme Court stated: '[A] plaintiff's prima facie case, combined with sufficient evidence that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.  This is not to say that such a showing by the plaintiff will always be adequate to sustain a jury's finding of liability.  Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory.'  <u>Chapman</u> 229 F.3d at 1025, n11 <u>quoting</u> <u>Reeves</u> 120 S.Ct. at 2109.
      While the quotation above deals involved a Rule 50, not a Rule 56, determination the Supreme Court said that the "standard for granting summary judgment mirrors the standard for granting judgment as a matter of law such that the inquiry under each is the same." <u>Id</u>.

The court thus starts with an examination of the plaintiff's
prima facie case.  It is undisputed that De la Torres was 62
years-old.  It is also undisputed that at the time the city did
not hire him to fill the posted signal tech position, he was a
member of a protected class (those over 40 years of age).  He was
not hired by the City to fill the posted traffic tech position.
The fact of this adverse employment action, too, is undisputed.
Additionally, the parties do not dispute that the city hired a
younger individual, Nance Towery, to fill the posted signal tech
position.  But the undisputed facts in the record indicate that
De la Torres was simply not qualified for the signal tech job.

As to the qualifications component of plaintiff's prima
facie case in the context of an ADEA claim, the plaintiff must
show that he was qualified for the available position.
Turlington, 135 F.3d at 1432.  The signal tech position required
an individual who was not only familiar with Model 170
microprocessor traffic signal controllers, but also with the
construction of the signal posts, the laying of wiring, and
experience in working with contractors to do similar such work.
Plaintiff simply does not possess any of these qualifications.
In fact, all that can be said of plaintiff's rather spotty work
history is that he had once worked on older, less sophisticated
traffic signals over fifteen years ago.  Without more, the court
is compelled to conclude, just as the City's decision-makers did,

that De la Torres was not qualified for the signal tech position.

Plaintiff asserts, however, that because of his experience in Dallas and because he possessed a CDL - the one "special necessary requirement" listed in the city's posting for the signal tech position - he is qualified for the signal tech position.  (See De la Torres Aff. at ¶ 1.)  At first blush, this assertion appears to have some merit.  But a closer look at the evidence before the court reveals that though the city had listed a CDL as a "necessary requirement", at the time the signal tech hiring decision was made, a CDL license was no longer necessary to qualify for the job.  The undisputed evidence reflects that the city had only one truck remaining in its traffic department fleet that required a CDL to operate and that that truck was in the process of being retired from service.  Moreover, when it was necessary to operate that particular truck, other signal technicians in the department held CDLs and would be available to operate it.  Plaintiff makes no effort to refute this claim whatsoever.  And as discussed supra pp. 18-19, plaintiff's old and limited experience is simply not relevant to the signal tech position offered by the City.  Accordingly, plaintiff's assertion regarding his experience and possession of a CDL is without consequence to his qualifications for the signal tech position.

For this reason the plaintiff has failed to carry his burden as to the qualifications component of the prima facie case.

19

Therefore, plaintiff's ADEA claim is due to be dismissed as a matter of law.

But even if the evidence before the court were sufficient to support the conclusion that plaintiff was qualified for the available position (and thereby establishing the prima facie case), disparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparities are "so apparent as virtually to jump off the page and slap you in the face." Hall v. Ala. Ass'n of Sch. Bds., 326 F.3d 1157, 1167-68 (11th Cir. 2003). In other words, to create a factual dispute as to pretext, the disparities in qualifications must be such that no reasonable person, exercising impartial judgment, could have chosen Towery over the plaintiff for the job. See Lee v. GTE Florida, Inc., 226 F.3d 1249, 1254 (11th Cir. 2000).

In this case, the City maintains that it did not hire plaintiff because, in the judgment of Barnett and others, he was not qualified for the job. The record quite clearly supports this judgment as plaintiff had no experience in the construction of traffic signals, his five years of experience in maintaining signals was fifteen years old, and this experience was limited to a less sophisticated type of signal than that used by the City. Towery, on the other hand, had recent experience in the construction of signals, in working with other contractors in the

field, and with the microprocessor controllers used by the City.

On this record, the evidence is insufficient to raise a genuine issue of fact regarding whether the City's stated reason for hiring Towery over plaintiff is pretextual.  <u>None</u> of plaintiff's proffered evidence establishes that he was more qualified for the position that Towery, let alone so clearly more qualified that a reasonable juror could infer discriminatory intent from the comparison.  In short, this evidence does not rise to the level of proof that is required when an employee attempts to prove pretext by showing he was substantially more qualified than the person hired.  Therefore, plaintiff has failed to proffer evidence sufficient to meet his burden of establishing that the City's reason for denying him the position was pretext for age discrimination.  And for this separate and independent reason defendant's motion for summary judgment is due to be granted.

### B.    The Title VII Claim

Plaintiff also asserts that he was discriminatorily denied the signal tech position because of his race in violation of Title VII of the Civil Rights Act of 1964.  Just as in the ADEA claim, the record is devoid of any direct evidence of discriminatory intent on the part of the defendant.  The record reflects no remarks or statements that could even remotely qualify as direct evidence of discrimination.  Thus, to prevail

21

on this Title VII claim the plaintiff must rely on circumstantial evidence of discrimination.

The analysis required of this claim is nearly identical to that required in plaintiff's ADEA claim.  The court again looks to McDonnell Douglas in analyzing the plaintiff's burden of production as to circumstantial evidence substantiating a prima facie case of discrimination on the basis of national origin. 411 U.S. 792, 93 S.Ct. 1817 (1973).  But there are two differences between the ADEA and the Title VII analysis.  The first is obvious.  It is that plaintiff's membership in a protected class is based upon his national origin instead of his age.  See Roberts, 835 F.2d at 796 citing Perryman v. Johnson Prod. Co., 698 F.2d 1138, 1142 n. 7 (11th Cir. 1983).  The second difference relates to the qualification component of plaintiff's prima facie case.  Under the ADEA, plaintiff is required to prove that he was qualified for the job for which he was rejected.  See Jameson, 75 F.3d at 1531; see also supra at 16.  However, under this Title VII claim plaintiff must show that the person who received the job was outside plaintiff's protected class and possessed equal or lesser qualifications than plaintiff.  Roberts, 835 F.2d at 796; see supra at n.13.

First, it is undisputed that De la Torres is a member of a protected class.  He is Hispanic.  It is also undisputed that he suffered an adverse employment action.  He applied for but was

22

not chosen for the signal tech job with the City.  It is
undisputed that Towery, the individual selected over De la Torres
for the job, is not a member of plaintiff's protected class.  He
is Caucasian.

However, the undisputed evidence demonstrates that De la
Torres simply was not qualified for the job.  And he certainly
was not as qualified as Towery.  While De la Torres had some
general prior experience working with traffic signals, he had no
experience working with the type of signal system used by the
City.  And even the limited experience he did possess had not
been utilized since he left his job with the City of Dallas over
fifteen years ago.  Additionally, plaintiff had no experience in
the construction of traffic signals.  Without this experience, De
la Torres is not qualified.  Precisely stated, these facts fail
to demonstrate to the court that plaintiff was at least equally
as qualified for the signal tech position as Towery.  The facts
overwhelmingly indicate that Towery had more recent, relevant
experience and general knowledge required for the position than
plaintiff.  Plaintiff's bare assertion that he was more qualified
than Towery is simply not sufficient to create a genuine issue of
material fact to defeat the motion for summary judgment on the
qualifications element of the prima facie case.  See Ben-Kotel v.
Howard Univ., 319 F.3d 532, 535-36 (D.C. Cir. 2003) (holding that
such an unsubstantiated, self-serving factual claim was

23

insufficient to create a factual dispute in the face of
overwhelming documentary evidence indicating the contrary).  For
these reasons, plaintiff has failed to establish a prima facie
case and defendant's motion for summary judgment as to the Title
VII claim is due to be granted.

Moreover, even if the court is incorrect in concluding that
the qualifications of plaintiff and Towery could be construed as
being even marginally equal, this court is not to engage in the
business of second-guessing an employer's decision to choose the
more qualified applicant for a job opening.  See Lee, 226 F.3d at
1253-54.  Indeed, the requirement of the plaintiff is to show to
this court that the disparity in qualifications is "so apparent
as virtually to jump off the page and slap you in the face."
Hall, 326 F.3d at 1167-68.  Plaintiff in this case has fallen far
short of that task.  For this separate and independent reason,
defendant's motion for summary judgment is due to be granted as
to plaintiff's Title VII claim.

In summary, the Court finds that no material issue of fact
remains and that defendant City of Huntsville is entitled to
judgment as a matter of law as to all claims asserted by
plaintiff.  And a separate order will be entered to this effect.

### C.  Defendant's Motions to Strike

On August 8 and 28, 2003 defendant filed motions to strike.
The first sought to strike and object to plaintiff's pretrial

witness and exhibit list.  (Doc. #30.)  Since the court has this day, for the reasons articulated above, granted defendant's motion for summary judgment as to all claims in this case, no trial will occur and defendant's August 8, 2003 motion is **MOOTED**.

Defendant's second motion to strike, filed on August 28, 2003, seeks to strike portions of plaintiff's affidavit which was filed as an evidentiary submission by plaintiff in response to defendant's motion for summary judgment.  (Doc. #34.)  Defendant argues that a number of statements made by plaintiff in his affidavit should be struck because they are conclusory arguments rather than a statements of fact.  All of the statements can be summarized as assertions by plaintiff of plaintiff's own qualifications for the signal tech position with the city or as assertions that plaintiff's qualifications are greater than those of Towery, the comparator in this case.  (See generally Exh.1 to Plaintiff's Evid. Submissions.)  This motion too is **MOOTED** by the court's order of this day granting defendant's motion for summary judgment.  For even considering the statements the defendant seeks to strike, plaintiff has failed to raise a genuine issue of material fact with which to defeat summary judgment.  See supra pp. 20-21, 24-25.

DONE this __19th__ day of February, 2004.

James H. Hancock

SENIOR UNITED STATES DISTRICT JUDGE

25